**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **ROSELINE CHOLOPY, in her Individual Capacity and as Administratrix of the Estate of ERIC A. KROMAH** | ) |
| **VS.** | ) **C.A. NO. 03-284 L** |
| **CITY OF PROVIDENCE; POLICE DEPARTMENT OF THE CITY OF PROVIDENCE; URBANO PRIGNANO, JR., Individually and in his Official Capacity as Chief of Police of the City of Providence; SERGEANT LOPARDO, Individually; and JOHN and JANE DOES 1-10, Supervisors, and/or Employees of the City** | ) |

**DEFENDANTS, PRIGNANO'S AND CITY OF PROVIDENCE'S, MOTION FOR SUMMARY JUDGMENT**

Now comes the Defendants Urbano Prignano, Jr. and the City of Providence in the above-entitled matter, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, and move for summary judgment on the grounds that there are no genuine issues of material fact and the Defendants are entitled to judgment as a matter of law.

Defendants rely on their accompanying memorandum in support thereof.

DEFENDANTS,
URBANO PRIGNANO and
CITY OF PROVIDENCE

By their Attorneys,

JOSEPH M. FERNANDEZ
CITY SOLICITOR

Kevin F. McHugh (#3927)
Senior Assistant City Solicitor
Department of Law
275 Westminster Street
Providence, RI 02903
(401) 421-7740, Ext. 333
(401) 351-7596 (Fax)

**CERTIFICATION**

I hereby certify that on this 29th day of September, 2005, I mailed a true copy of the foregoing, by regular mail, postage prepaid, to the following:

Roseline Cholopy
126 Academy Avenue
Providence, RI 02908

Joseph A. Moniz, Esquire
Moniz, Cooper & McCann, LLP
100 Allyn Street
Hartford, CT 06103

Joseph F. Penza, Jr.Esquire
Olenn & Penza
530 Greenwich Avenue
Warwick, Rhode Island 02886

Carolyn M. Ranucci

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

FILED
SEP 29 2005
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

**ROSELINE CHOLOPY, in her Individual Capacity and as Administratrix of the Estate of ERIC A. KROMAH**

**VS.**

**CITY OF PROVIDENCE; POLICE DEPARTMENT OF THE CITY OF PROVIDENCE; URBANO PRIGNANO, JR., Individually and in his Official Capacity as Chief of Police of the City of Providence; SERGEANT LOPARDO, Individually; and JOHN and JANE DOES 1-10, Supervisors, and/or Employees of the City**

**C.A. NO. 03-284L**

**DEFENDANTS, PRIGNANO'S AND CITY OF PROVIDENCE'S, MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## I. Statement of Facts

This is a 42 U.S.C. § 1983 case alleging police misconduct in the use of excessive force. The Plaintiff is Rosalind Cholopy, the Administratrix of the Estate of Eric Kromah, the victim of the alleged excessive force.

The Defendants are the City of Providence, Urbano Prignano, Jr., in his individual and official capacity as Chief of Police and Sergeant Kenneth Lopardo, in his individual capacity. Ten John Does are named.

This Court previously denied the Plaintiffs' motion to amend the complaint to add the individual police officers who were involved in the use-of-force incident itself.

Sergeant Lopardo was a supervisor at the time of the incident and Urbano Prignano, Jr. was the Chief of Police at the time of the incident.

## II. Statement of the Law

Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Summary judgment is appropriate when the record documents that possess evidentiary force "show that there is no genuine issue as to any material fact." Fed.R. Civ. P. 56(c). Once the moving party avers "an absence of evidence to support the non moving party's case, the burden of production shifts to the non movant." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). To defeat a motion for summary judgment, the non movant must tender "significant probative evidence" which, when viewed in the light most flattering to the non movant, illumines a genuine and a material factual dispute. See First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); 477 U.S. 242, 247-48 (1986); Medina-Monoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). While the required proof need not necessarily rise to the level of admissible trial evidence, see Celotex, 477 U.S. at 324, it must consist of something more than "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Monoz v. R.J. Reynolds Tobacco Co., 896 F.2d at 8 (1st Cir. 1990); accord Fragoso v. Lopoz, 991 F.2d 878, 886 (1st Cir. 1993).

## III. Argument

### A. There is no evidence of an unconstitutional municipal policy.

The federal allegations against the City are as follows:

> 18. Defendants City and PPD through their official, Prignano, under the color of the constitution, statutes, laws, charter, ordinances, rules, regulations, customs and usages of the State of Rhode Island and the City of Providence, failed to institute or enforce procedures which would protect the health and welfare of citizens in situations similar to that of Kromah.
>
> 19. On information and belief, the injuries of Kromah were the result of a policy, practice, custom and/or usage of the City of hiring and retaining police officers without properly screening such employees as to racial animus and propensity for violence or failing to adhere to such policies, practices or procedures.
>
> 20. On information and belief, the injuries to Kromah were the result of the City and Prignano failing to properly supervise their police officers including, but not limited to, Lopardo and John and Jane Does 1-10. The City's failure to mandate that its police officers be properly supervised rises to the level of being a policy, practice, custom and/or or usage of the City of not properly supervising its police officers.
>
> **Count V**
> **(Monell Claims As to Defendant City of Providence)**
>
> 21. On information and belief, the injuries of Kromah were the result of a policy, practice, custom and usage of Defendant City, by and through Defendant Prignano, an official policymaker of the City of Providence, of hiring and retaining police officers without properly screening such employees as to racial animus and propensity for violence or failing to adhere to such policies, practices or procedures.
>
> 22. On information and belief, the injuries of Kromah were the result of a policy, practice, custom and usage of the Defendant City of providing constitutionally inadequate

> supervision of its supervising employees to make sure they did not use deadly and/or excessive force.
>
> 23. On information and belief, the injuries of Kromah were the result of a policy, practice, custom and usage of the Defendant City of failing to train police officers in the proper use of force in arresting citizens of the State of Rhode Island.
>
> 24. As a result of the aforementioned polices and/or customs, Providence police officers believed that their actions and/or omissions would not be properly monitored and that misconduct would not be investigated or sanctioned but would be tolerated.
>
> 25. Said policies, practices and customs of Defendant City complained of herein, as well as its omissions, deprived Kromah of his rights secured by the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution in violation of 42 U.S.C. § 1983.

Thus, the Plaintiff must meet the municipal liability standard in order for the City to be held liable in this matter. That standard is as follows:

> 42 U.S.C. § allows for the finding of liability upon any person who, while acting under color of state law, deprives another of his rights and privileges secured by the Constitution or laws of the United States, 42 U.S.C. § 1983. It is clear that in any Section 1983 action, the plaintiff is required to prove that he has been deprived of a right "secured by the Constitution and laws," Baker v. McCollan, 433 U.S. 137, 140 (1979). Moreover, it is well-settled that municipalities cannot be held liable on the theory of respondeat superior, Monell v. City of New York Department of Social Services, 436 U.S. 658 (1978). Nor can the municipality be liable where the underlying conduct of its

> supervision of its supervising employees to make sure they did not use deadly and/or excessive force.
>
> 23. On information and belief, the injuries of Kromah were the result of a policy, practice, custom and usage of the Defendant City of failing to train police officers in the proper use of force in arresting citizens of the State of Rhode Island.
>
> 24. As a result of the aforementioned polices and/or customs, Providence police officers believed that their actions and/or omissions would not be properly monitored and that misconduct would not be investigated or sanctioned but would be tolerated.
>
> 25. Said policies, practices and customs of Defendant City complained of herein, as well as its omissions, deprived Kromah of his rights secured by the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution in violation of 42 U.S.C. § 1983.

Thus, the Plaintiff must meet the municipal liability standard in order for the City to be held liable in this matter. That standard is as follows:

> 42 U.S.C. § allows for the finding of liability upon any person who, while acting under color of state law, deprives another of his rights and privileges secured by the Constitution or laws of the United States, 42 U.S.C. § 1983. It is clear that in any Section 1983 action, the plaintiff is required to prove that he has been deprived of a right "secured by the Constitution and laws," Baker v. McCollan, 433 U.S. 137, 140 (1979). Moreover, it is well-settled that municipalities cannot be held liable on the theory of respondeat superior, Monell v. City of New York Department of Social Services, 436 U.S. 658 (1978). Nor can the municipality be liable where the underlying conduct of its

subordinate officers is not unconstitutional, City of Los Angeles v. Heller, 106 S.Ct. 1571 (1986).

Although municipalities are considered persons under Section 1983, the constitutional deprivation must arise out of what can fairly be said to be policy of the municipality, Monell v. City of New York Department of Social Services, 436 U.S. 658 (1978), see also, Manor Healthcare Corp. v. Lomelo, 929 F.2d 633, 637-638 (11th Cir. 1991). To recover, the plaintiff must show that the actions complained of are actions which the municipality has officially sanctioned or ordered, or in the alternative, the plaintiff must be able to show that the complained-of conduct was pursuant to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled that it constitutes a custom or usage with the force of the law, see City of St. Louis v. Praprotnik, 485 U.S. 112 (1988).

With respect to those actions which are officially sanctioned or ordered, it is an additional requirement that only those municipal officials who have "final policy-making authority" may, by their actions, subject the government to Section 1983 liability and whether a particular official has "final policy-making authority," is a question of state law. Id. Moreover, the challenged action must have been taken pursuant to a policy

> adopted by the official or officials responsible under state law for making policy in that area of the city's business and the identification of such policy-making officials is not a question of federal law and not a question of fact for the jury to decide, but is a matter for the court to decide with reference to state law. Id. The plaintiff must prove the existence of an unconstitutional municipal policy before a municipality can be held liable under Section 1983. Id.

These are essentially boilerplate allegations. The Plaintiff has not uncovered any evidence from its cursory discovery requests that so much as suggests that the City either failed to train applicants for hire or failed to train those applicants who were accepted into the Police Training Academy.

In fact, the Plaintiff has conducted no discovery as to training.

The Plaintiff has uncovered no evidence of any similar incident. Thus, this case, even at the end of discovery, constitutes the classic single-incident case which, absent other evidence, cannot establish municipal liability as a matter of law. See Bordanaro v. McLeon, 871 F.2d 1151 (1st Cir. 1989).

The Court cannot decide whether or not the training or screening was adequate if it doesn't know what the training or screening consisted of. Moreover, there are no individual defendants below the level of supervisor who could be held liable for a constitutional violation. If there is no finding of a constitutional violation against an individual officer, there can be no municipal liability. See Heller v. City of Los Angeles, 106 S.Ct. 1571 (1986).

**B. There is no evidence to establish supervisor liability against defendant Prignano.**

Urbano Prignano, Jr. was the Chief of Police at the time of the incident. The allegations against him are as follows:

**<u>Count Two</u>**
**(Substantive Due Process as to Defendants Prignano and Lopardo)**

21. At all times relevant hereto, Defendants Prignano and Lopardo were employed by defendant City as its Chief of Police and officer and/or sergeant of the PPD respectively and at all times herein acted under color of law.

22. Defendants Prignano and Lopardo undertook a duty to protect Kromah.

23. The acts and omissions of Defendants Prignano and Lopardo including, but not limited to, the use of deadly and excessive force which violated the rights, privileges and immunities of Kromah secured under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. § 1983.

24. The conduct of Defendants Prignano and Lopardo, as contained herein, is an example of police conduct which "shocks the conscience" and constitutes substantive due process violations.

25. Due to Defendant' Prignano and Lopardo due process violations, Kromah died and Plaintiff has suffered damages.

**Count Three**
**(1983 Conspiracy as to all Defendants)**

1-20. Paragraphs 1 through 20 of Count I are hereby incorporated in this Count III as if fully plead herein.

21. Upon information and belief Defendants and John and Jane Does 1-10, acting in their individual capacities and under color of state law, having conspired with others, reached a mutual understanding and acted to undertake a

course of conduct that violated Plaintiff's civil rights, to wit;

> The defendants agreed and acted to conceal the true cause of Kromah's death.

22. By reason of the foregoing, defendants violated 41 U.S.C. § 1983 by depriving Kromah of his constitutional rights.

23. This conspiracy continues to date.

24. As a direct result of the conspiracy among defendants, Plaintiff suffered severe physical and emotional injuries.

**Count IV**
**(Supervisory Liability)**

21. Defendant Prignano, as Providence's Chief of Police, and Defendants John and Jane Does 1-10, were responsible for training and supervising officers in the performance of their duties.

22. Upon information and belief, Defendants Prignano and John and Jane Does 1-10 were aware or should have been aware of the policies, practices and/or usages of the PPD whereby they would provide training in connection with the proper procedure for the use of force including, but not limited to, deadly force and use of pepper spray.

23. The aforementioned acts and omissions of Defendants Prignano and John and Jane Does 1-10 deprived Kromah of his rights and immunities secured by the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution in violation of 42 U.S.C. § 1983.

24. As a result of Defendants' Prignano, and John and Jane Does 1-10 conduct, Kromah died and Plaintiff has suffered damages.

The standard for establishing supervisor liability under 42 U.S.C. § 1983 is as follows:

Under 42 U.S.C. § 1983, supervisory law enforcement officers incur no *respondeat superior* liability for the actions of their subordinates. See, e.g., City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202-1203, 103 L.Ed. 2d 412 (1989). Absent participation in the challenged conduct, a supervisor "can be held liable[only] if (1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was *affirmative[ly] link[ed],* to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation of acquiescence' or 'gross negligence [of the supervisor'] amounting to *deliberate indifference.*' " Lippett v. University of Puerto Rico, 864 F.2d 881, 902-03 (1st Cir. 1988) (emphasis added) (citation omitted); see Rodrigues v. Furtado, 950 F.2d 805, 813 (1st Cir. 1991) (discussing deliberate indifference to officer training). Deliberate indifference will be found only if "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." Febus-Rodriguez, 14 F.2d at 92 (quoting Germany v. Vance, 868 F.2d 9, 18 (1st Cir. 1989)). The "affirmative link" requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation. *See id.*

It is undisputed that Prignano was not at the scene of the incident and did not participate in the incident. Therefore, Prignano can only be held liable if the behavior of any of his subordinates results in a constitutional violation and Prignano's action or inaction was affirmatively linked to his behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference. See Lippitt v. University of Puerto Rico, 864 F.2d 881, 902-03 (1st Cir. 1988).

In the instant case, there is no individual defendant to hold liable for a constitutional violation.

There is nothing that links any action or inaction of Prignano to the incident in question. There has been no discovery taken of Prignano. There has been no evidence uncovered as to Prignano's duties and responsibilities.

In short, the boilerplate allegations against Prignano in the complaint remain just that at the close of discovery. They, alone, are insufficient to establish supervisory liability against Prignano.

## Conclusion

Given the small amount of discovery conducted against the City, no discovery conducted against Prignano and no individual defendant to be held liable for the incident itself, summary judgment is appropriate.

WHEREFORE, Defendants Prignano and City of Providence pray that their Motion for Summary Judgment be granted.

Respectfully submitted,

DEFENDANTS,
URBANO PRIGNANO and
CITY OF PROVIDENCE

By their Attorneys,

JOSEPH M. FERNANDEZ
CITY SOLICITOR

Kevin F. McHugh (#3927)
Senior Assistant City Solicitor
Department of Law
275 Westminster Street
Providence, RI 02903
(401) 421-7740, Ext. 333
(401) 351-7596 (Fax)

**CERTIFICATION**

I hereby certify that on this 29th day of September, 2005, I mailed a true copy of the foregoing, by regular mail, postage prepaid, to the following:

Roseline Cholopy
126 Academy Avenue
Providence, RI 02908

Joseph A. Moniz, Esquire
Moniz, Cooper & McCann, LLP
100 Allyn Street
Hartford, CT 06103

Joseph F. Penza, Jr., Esquire
Olenn & Penza
530 Greenwich Avenue
Warwick, Rhode Island 02886

Carolyn M. Ranucci