JFP:pac 95326 \pleading\95326Objection.wpd

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROSELINE CHOLOPY, In Her Individual Capacity and as Administratrix of the Estate of ERIC A. KROMAH | ) | |
| VS. | ) | C.A. NO. 03-284L |
| CITY OF PROVIDENCE, ET AL | ) | |

**DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

Now come the defendants in the above-entitled matter and object to the plaintiff's motion for reconsideration on the grounds that said motion and the memorandum in support thereof contain material misrepresentations of facts and is otherwise misleading.

In support of said objection, the defendants have attached a memorandum of law.

DEFENDANT, Kenneth Lopardo
By their Attorney,

Joseph F. Penza, Jr., Esq. #0607
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

DEFENDANTS, City of Providence and Urbano Prignano
By their Attorney,

Kevin F. McHugh, Esq. #3927
City Solicitor's Office
100 Fountain Street
Providence, RI 02903-1845
PHONE: (401) 421-7740 EXT. 133

**CERTIFICATION**

I certify that I sent a true copy of the within on 10/31/05 to:

Joseph Moniz, Esq.
Moniz & Associates
100 Allyn Street
Hartford, CT 06103

Alton Wiley, Jr., Esq.
Local Associate Counsel
960 Reservoir Avenue, Suite 22
Cranston, RI 02910

Patricia A. Cerca

JFP:pac 95326 \pleading\95326MemoLawObject.wpd

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROSELINE CHOLOPY, In Her Individual Capacity and as Administratrix of the Estate of ERIC A. KROMAH | ) | |
| VS. | ) | C.A. NO. 03-284L |
| CITY OF PROVIDENCE, ET AL | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

## I. INTRODUCTION

Defendants file this objection to the plaintiff's motion for reconsideration. Plaintiff's motion and supporting memorandum is fraught with inaccuracies—**which plaintiff's counsel actually admits in a subsequent letter to defense counsel**. In short, the motion is without factual or legal foundation.

## II. ARGUMENT

### 1. The Providence Police Department Report Does Not Contain Witness Statements.

The linchpin of the plaintiff's argument is based on the misrepresentation that witness statements are somehow part of a police report. That simply is not true—either for this case, or for any case. A police report contains pertinent information regarding (among other things) the date, time and place of the offense, the type of crime involved, information regarding the arrested individual, and a brief narrative by one of the officers who was involved in the incident. A witness statement on the other hand contains a brief narrative of individuals (including police officers) who have knowledge about the incident being investigated. For example, in this particular case, there was a one-page police report prepared by Sergeant Lopardo. In addition, there were six witness statements of police officers and three witness statements of civilians.

To suggest that plaintiff has been misled into believing that the police report consisted of only one page when in fact it included all of the witness statements is disingenuous at best. Out-of-state counsel is presumably experienced in this area of the law and certainly knows the difference between a police report and a witness statement. Moreover, local counsel practices criminal law throughout the state and obviously is aware of the distinction between a police report and a witness statement.

**2. Plaintiff's Reliance on Officer Kemble's Deposition Testimony to Support Her Position is Misleading, and More Importantly, Inaccurate.**

In support of her contention that witness statements are part of the police report, plaintiff references a portion of Officer Edwin Kemble's deposition taken on September 8, 2005. This is the interchange between plaintiff's counsel and Kemble that supposedly supports the plaintiff's position.

Q: It *(referring to Kemble's witness statement)* says date 7-28-00, is that the date on which you gave the statement?
A: Most likely, yes.

Q: Do you remember where it was that you gave the statement?
A: At the police station.

Q: To whom did you give the statement?
A: It becomes part of the police report, **police package**. (emphasis added).

Q: Is this a form that is used by the Providence Police for **statements** that are given? *(emphasis added)*
A: Yes.

[From Kemble's deposition at page 12, lines 15-23.]

Of significance is Kemble's correcting himself in the very same sentence when he misspoke. He initially made reference to the statement being part of the "police report". He obviously knew that was an error and in the very next two words corrected himself by saying "police package".

While plaintiff initially made reference to Kemble's full testimony (i.e. the one that references "police package") by quoting same, plaintiff simply then goes on throughout the memorandum and assumes that the witness statement of Kemble and others is in fact part of the police report even though Kemble distinguished the police report from the police package.

In what counsel evidently believes further buttresses this absurd proposition, he highlights Kemble's deposition testimony at page 17 [see page 4 of plaintiff's memorandum]. Counsel states in his memorandum that after Kemble's statement at page 12 of his deposition (quoted above) that he then "explained in detail that the statement was part of the report". That is a flat out falsehood. Attached for the court's review are those portions of Kemble's deposition dealing with this issue ***(Exhibit A)***. Pages 13 through 17 of the deposition reveal that plaintiff's counsel questioned him about his <u>witness statement</u> in detail. Nowhere in those pages or any other place in the deposition does Kemble "explain in detail" that his witness statement is part of the police report.

**3. Defendants Did Not Conceal Anything From the Plaintiff.**

At pages 4 and 5 of plaintiff's memorandum of law, counsel states the following with respect to the defendants' actions in connection with the report:

- "The Defendants fraudulently concealed from the Plaintiff a critical part of the Providence Police Report into this incident, i.e., the statements of the officers involved in the arrest...".

- "The Defendants then sought to and did benefit from their failure to disclose by arguing in their Motion to Dismiss that the Plaintiff had failed to timely include the individual officers...in this suit".

- "Had the Defendants not concealed the full report which Plaintiff repeatedly sought, the Plaintiff would have been able to name all the involved officers in a timely fashion".

- "Defendants should not be permitted to benefit from their intentional failure to provide the full Police Report despite the repeated efforts of the Plaintiff to obtain the same."

These scurrilous statements are without foundation **and plaintiff's counsel has essentially admitted same.**

Reading plaintiff's memorandum, it implies (if not directly states) that during the course of this litigation, plaintiff had made concerted efforts to obtain certain documentation only to be misled by the "defendants". In fact, the record reveals the following. First and foremost, the plaintiff, who was representing herself for a good portion of this case, never made a request for production for any documents whatsoever. Second, the defendant Lopardo in timely responding to interrogatories propounded to him, provided the plaintiff with the witness statements of the police officers. Third, even though there was no request for production directed to the city, counsel for the city, in response to a request made by Magistrate Judge Martin at one of the pre-trial conferences, produced the entire police package to the plaintiff ***(Exhibit B)***.

What is clear from the plaintiff's argument is that he is very unclear and vague about who the "defendants" are that he is referring to who supposedly "fraudulently concealed" the documents counsel believes should have been part of the police report. In one portion of the memorandum, it seems that counsel is suggesting that the "defendants" are the officers who were dismissed from the case ["The Defendants then sought to and did benefit from their failure to disclose by arguing in their Motion to Dismiss that the Plaintiff failed timely to include the individual officers..."]. Next, he seems to suggest that the "defendants" involved in this "cover up" are Lopardo, former Chief Prignano, and the City of Providence ["The Defendants now have moved for Summary Judgment based upon the Court's dismissal of the claims against the individual officers..."].[1]

---

[1] Once again, plaintiff's counsel misstates the basis for the motion for summary judgment, but that is of no significance with respect to the motion for reconsideration.

As to whom counsel is actually referring to in his memorandum of law, the court's attention is directed to ***Exhibit C***. Upon receipt of the plaintiff's motion for reconsideration, counsel were outraged about the allegations contained therein. Counsel for the defendant Lopardo called local counsel and advised him in no uncertain terms what he felt about the motion and demanded that it be withdrawn. In response thereto, out-of-state counsel wrote a letter to Attorney Penza on October 27, 2005 (***Exhibit C***). In that letter, counsel attempts to explain that the allegations of fraudulent concealment were not directed to him or his office. However, he never clarifies even in the letter as to whom the allegations are directed against. Counsel then goes on to misstate once again that the witness statements are "an attachment to the police report".[2] Counsel proceeds to pontificate that it is his belief that the official police report should have contained more than a one paragraph narrative. More significantly, we learn for the first time in this letter what apparently happened here.[3] It appears that the Kromah family went to the Providence police station and requested the report of what happened. They were given the one-page police report of Sergeant Lopardo. Moniz contends that all of the police documents should have been given to the family, if for no other reason than out of respect to the family. He further contends that there would be no reasonable explanation as to why the witness statements should not have been turned over. Finally, he claims that anyone who was aware of the statements and who knew the plaintiff was seeking the police report would have understood the significance of the accounts of the involved police officers.

It is obvious that none of the foregoing has anything to do with the outrageous allegations contained in the plaintiff's memorandum that <u>the defendants</u> fraudulently concealed documents from the plaintiff. In all likelihood, the decedent's family went to the police station at some point in time after the decedent's death and asked for the police report of the incident. They were undoubtedly given a copy of the police report. Notwithstanding Mr. Moniz' belief that the

---

[2] Actually, this is even a little bit different than the representation he made to the court in his memorandum where he continually alleges that the witness statements are "part of the report".

[3] Of course, there is no supporting affidavit from anyone from the Kromah family to support the contentions set forth in Moniz' letter.

report was too brief and/or that the department should have turned over witness statements, the fact of the matter is that in the context of this litigation, plaintiff and her counsel were never misled by anyone. To suggest otherwise is a flat out lie.

## III. CONCLUSION

For all of the reasons stated herein, defendants pray that the plaintiff's motion for reconsideration be denied.

Respectfully submitted,
DEFENDANTS,
By their Attorneys,

Joseph F. Penza, Jr., Esq. #0607
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

Kevin F. McHugh, Esq. #3927
City Solicitor's Office
100 Fountain Street
Providence, RI 02903-1845
PHONE: (401) 421-7740 EXT. 133

## CERTIFICATION

I certify that I sent a true copy of the within on 10/31/05 to:

Joseph Moniz, Esq.
Moniz & Associates
100 Allyn Street
Hartford, CT 06103

Alton Wiley, Jr., Esq.
Local Associate Counsel
960 Reservoir Avenue, Suite 22
Cranston, RI 02910

A. I believe the same day, late in the afternoon, yes.
Q. Aside from those statements, did you review any reports?
A. Just the basic -- the original report.
MR. MONIZ: I'm going to show you and have marked a couple of documents.
(PLAINTIFF'S EXHIBITS 1 THROUGH 5 MARKED FOR IDENTIFICATION)
Q. Showing you for the record what was marked as Plaintiff's Exhibit Number 1 which appears to be a statement by yourself, do you recognize that?
A. Yes, I do.
Q. Is that a statement that you signed?
A. Yes.
Q. And that, I assume, is one of the statements you reviewed a few weeks ago here?
A. Yes.
Q. Showing you what's been marked as Exhibit 2 which is a statement by Officer Pazzetta, Vincent Pazzetta; do you recognize that?
A. Yes.
Q. Is that a statement you also reviewed when you were here a couple weeks ago?
A. Yes.



Q. Showing you what's been marked as Exhibit 3, Plaintiff's Exhibit 3, a statement by Officer Lopardo, Kenneth Lopardo; do you recognize that as one of the statements you reviewed here?
A. Yes.
Q. And showing you Exhibit 4, Plaintiff's 4, a statement of Michael Imondi; do you recall reviewing that?
A. Yes.
Q. Finally, Exhibit 5, which is entitled a Uniform Report. Do you recognize that as something that you reviewed also?
A. Yes.
Q. Now, Officer Kemble, aside from those five exhibits that I've shown you, do you recall reviewing any other statements while you were here a few weeks ago?
A. No.
Q. Did you review any other reports or any other writings not necessarily statements of individuals?
A. No.
Q. The statement which you signed, which I believe is Exhibit 1, do you recall the circumstances under which you gave that statement?



A. Yes.
Q. Could you explain to me the circumstances under which you gave that statement?
MR. PENZA: Objection to form. You can answer.
A. Basically I responded to a call for break in progress.
Q. Okay. Now, this statement that you gave does not have, as I can tell, a date on it. Is that a fair statement?
A. On 7-28-00, the first line.
Q. It says date 7-28-00, is that the date on which you gave the statement?
A. Most likely, yes.
Q. Do you remember where it was that you gave the statement?
A. At the police station.
Q. To whom did you give the statement?
A. It becomes part of the police report, police package.
Q. Is this a form that is used by the Providence Police for statements that are given?
A. Yes.
Q. There appears to be at the top, it says, "Question: What is your name?" Is that something



that was being asked of you by someone, or is that a part of a form?
A. That's part of the form.
Q. Who is it that filled in the information in this case?
A. I don't know.
Q. Did you type the information that's in here?
A. Yes.
Q. So this was typed yourself?
A. Yes.
Q. So where it says what is your name, is that something that was typed in advance on a form?
A. Correct.
Q. What about the line that says, "I, Edward J. Kemble, Jr., voluntarily, without threats," is that part of something you typed or was that already there?
A. Everything there, but my name.
Q. So you would type your name in?
A. Yup.
Q. The information, "What is your name?" I assume that's something you would type in?
A. Correct.
Q. Do you put the A and then the colon, Edwin J. Kemble, Jr.? Do you see where it says Q and a

EXHIBIT A

Word Index

colon, "What is your name?" Below that there is an A:.
A. I do not put the letter A, I just fill in the blanks.
Q. So you would fill in the date of birth, for example, where it says 6-9-56, and then 209 Fountain Street, you would have filled in?
A. Yes.
Q. As well as police officer?
A. Yes.
Q. And where it gives the phone number there, you filled that in yourself?
A. Yes.
Q. Is that the police department phone number or your personal number?
A. That's the police department phone number.
Q. Then the information that's filled in here, that's filled in by you?
A. Correct.
Q. There's no indication of the time that you did this report other than on top, it says time 2322 hours. Do you know when you filled this report out?
A. It would be at that time.
Q. Is it your testimony that you filled this report



out at 11:22, or is that the time of the incident that was investigated?
A. It was probably the time of the incident.
Q. And as you will see in the other reports, all of the -- if you look at the uniform police report, which is Exhibit 5, it indicates in that report that the incident was reported at approximately 2322, correct?
A. Okay. Correct.
Q. If you look at the first line of your report, it says that, "On 7-28 at 2322 hours I responded to 101 River Street"?
A. Yes.
Q. Would you agree with me the 2322 is the time this incident was first reported?
A. 2322 hours. The top time is probably an incorrect time. It's probably done an hour or two hours after the incident.
Q. Do you remember as you sit here today actually filling this report out?
THE WITNESS: What's the question?
Q. Do you remember today as you're sitting here now, the circumstances under which you filled this report out?
MR. PENZA: Objection to form. You



can answer.
A. It's been quite awhile. Pretty much.
Q. I assume you were at the police department when you did this?
A. Yes.
Q. And you don't remember -- withdraw that. Do you remember whether or not it was after the incident itself that same evening or in the early morning hours?
A. After the incident.
Q. But you don't remember what time?
THE WITNESS: Filling this report out?
MR. MONIZ: Right.
A. Hour or two hours later.
Q. When it says time on the top there, where it's 2322 hours, is that slot intended to be the time that you filled the report out or the time of the incident itself?
A. The time of the incident -- the time of the incident, what time you're taking the statement, that's when it's supposed to be.
Q. What you said earlier, when you said that's in error, the time, it should be the time that you filled the statement in?



A. Correct.
Q. There is no other way for us to tell when it is that you did the report?
A. There probably is a way, somehow. Logging into the computer system.
Q. But you agree that time was supposed to be when you do the report as opposed to when it's reported?
A. Uh-huh.
Q. And when you do these reports, is this something that's required by the Providence Police Department?
A. Yes.
Q. Let me switch subjects for a minute, Officer Kemble, and ask you if you would just give me your background as a police officer with the Providence Police Department.
A. Approximately seven and a half years on the job right now in the patrol division.
Q. When did you first come on to the department?
A. Sworn in June 2nd, 1998.
Q. You were sworn in as a patrol officer?
A. Yes.
Q. Is that the current rank you hold?
A. Yes.

JOSEPH M. FERNANDEZ
City Solicitor

DAVID N. CICILLINE
Mayor

**Department of Law**

December 23, 2003

Ms. Roseline Cholopy
126 Academy Avenue
Providence, RI 02908

RE: Roseline Cholopy v. City of Providence, et al
C.A. No. 03-284L

Dear Ms. Cholopy

Pursuant to Magistrate-Judge Martin's order of December 22, 2003, enclosed find all the records in the possession of the Providence Police Department concerning the incident which is the subject matter of this lawsuit.

Very truly yours,

Kevin F. McHugh
Assistant City Solicitor

KFM:cmr
Enclosures

cc: Joseph M. Fernandez, City Solicitor
Joseph F. Penza, Jr., Esq.

275 Westminster Street, Suite 200 • Providence, Rhode Island 02903-1845
(401) 421-7740 (Voice) • (401) 751-0203 (TDD) • (401) 351-7596 (Facsimile)

EXHIBIT B

**MONIZ & ASSOCIATES**
100 Allyn Street
Hartford, Connecticut 06103

Telephone: (860) 278-0200
Facsimile: (860) 278-2212

JOSEPH A. MONIZ

October 27, 2005

Joseph F. Penza, Jr., Esq
Olenn & Penza - LLP
530 Greenwich Ave.
Warwick, RI 02886

Re: **Chology v. City of Providence, et al.**

Dear Attorney Penza:

I am writing this letter in response to a call I received yesterday from Bill Wiley, our local counsel in this matter. He informed me that you called him late yesterday regarding the motions we filed earlier in the day regarding our claim that the defendants had fraudulently concealed a critical portion of the Providence Police Report regarding the arrest and death of Eric Kromah on July 28, 2000. The message he gave me was that you took offense to the motions, and gave us until 5pm tomorrow to withdraw the motion, or that you would come out "with guns blazing" and would seek sanctions under Rule 11. From what Bill told me, you apparently interpreted the motions to suggest that we accused you of fraudulently concealing the missing portions of the Providence Police Report. That is not what we state in our motions, nor do we believe that you or your office is responsible for the failure of the defendants to provide the full police report, as they should have.

I filed the motions in question after reviewing the record carefully, and being fully aware of the representations made therein. This is a case in which the husband of my client died while in the custody of the Providence Police, when the only visible injuries he suffered according to your clients were minor surface wounds, for which he was taken to Roger Williams Hospital. While that alone is strange, Kromah was described by all involved as perfectly okay when he got into the police cruiser and died on the way to the hospital. To top things off, we have two diametrically opposed medical reports as to the cause of his death. No matter what the cause of Eric Kromah's death, the official police report should have contained more than a one paragraph narrative by an officer who apparently was only involved after the fact of the conduct by the officers who arrested Kromah. We learned for the first time during the deposition of Officer Kemble that there was in fact an attachment to the police report in the form of statements by the involved officers, which was contained on a form used by the Providence Police Department for statements of officers to an incident. Officer Kemble's testimony very clearly states that

EXHIBIT C

his and the statements of other officers involved in the arrest are a part of the official police report of the incident.

This part of the report should have been provided to the Plaintiffs along with the one page, one paragraph report signed by Officer Lopardo, if for no other reason, than out of respect to a family who deserved to know the circumstances surrounding the death of their loved one. And, Kromah's family repeatedly requested the full report of what happened, and were given only the one page report of Sgt. Lopardo. Even if one were to argue that the statements of the officers on the night of the incident were not technically a part of the report, which would be contrary to the testimony of Officer Kemble, there still would be no reasonable explanation as to why the statements of the officers involved would not have been provided to the family, or at the very least, some claim made that they were confidential or somehow protected. Anyone who was aware of the existence of these statements and who knew that the Plaintiff was seeking the police report into this highly unusual death would certainly understand the significance of the accounts of the involved officers. This is especially true in view of the incredibly short narrative report of Officer Lopardo.

In conclusion, I stand by the motions we filed and believe that Officer Kemble's testimony gives ample support to the claims made therein. Please feel free to call me if you would like to discuss this further.

Very truly yours,

Joseph A. Moniz

Joseph A. Moniz

Cc: Kevin F. McHugh, Esq.
Alton Wiley, Jr., Esq.