UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ROSELINE CHOLOPY, In Her Individual Capacity and as Administratrix of the Estate of ERIC A. KROMAH | : | CIVIL ACTION NO. 03-284L |
| Plaintiff | : | |
| VS. | : | |
| CITY OF PROVIDENCE, ET AL | : | |
| Defendants | : | NOVEMBER 8, 2005 |

**REPLY TO DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

## I. INTRODUCTION

The Defendants have objected to the Plaintiff's Motion for Reconsideration of this Court's ruling on the Defendants' Motion to Dismiss to Dismiss the Amended Complaint, which had the effect of dismissing the Amended Complaint as to the "newly" added defendants. By the Amended Complaint, the then *pro se* plaintiff added the names of the individual officers involved in the arrest and subsequent death of her husband, Eric Kromah, which names she had received within days of the filing of the Amended Complaint. The Plaintiff had not received the names of the officers involved in the arrest until the defendants disclosed these names through propounded discovery in the suit which she

originally filed on July 2, 2003. Upon receipt of these names through discovery, the Plaintiff immediately sought permission of the Court to amend her complaint to add the names of the officers, whom she had named in the Complaint as "John Doe 1-10".

The newly named defendants filed motions to dismiss the Amended Complaint based upon a running of the applicable three year statute of limitations. The Court granted the Defendant's motion to dismiss the Amended Complaint as to the newly added defendants based upon their argument that the relation back doctrine did not apply in this case.

During recent discovery in this case, and in particular, during the September 8, 2005 deposition of one of the directly officers involved in the arrest of the decedent, Officer Edwin Kemble, the Plaintiff learned that the Witness Statement of this and other involved officers[1] were taken as a part of the investigation by the department and according to Kemble "were a part of the police report, police package." (Kemble Dep., p. 12.) The Plaintiff had requested this "police report, police package" shortly after the death of her husband through an investigator who was given a two page report entitled "Providence Police Department Uniform Report" (Attached as Exh. A.)(hereinafter "Uniform Report"), which contained the time and date of the incident and the name and address of the decedent, along with a brief one paragraph narrative of the incident by Sgt. Lopardo. The second page

Officer Kemble and the others deposed were the individually named officers who were dismissed from the case by the Court's ruling at issue in the present motion.

of the report was on the same form as the first page, but it was blank below the title of the form through item number 34, which contained the identical information as page one.[2] Through discovery responses dated December 8, 2003 from the remaining named officer, Sgt. Lopardo, the Plaintiff received a similar "Uniform Report" of this incident, except that this report was only one page and contains different information, including the entries in 10 through 23, and a slightly different narrative by Sgt. Lopardo. (Attached as Exh. B.)

Based upon the testimony of Officer Kemble and Sgt. Lopardo, and the discrepancies between the Uniform Report obtained by Plaintiff's investigator and the Uniform Report provided by Defendant Lopardo through discovery[3], the Plaintiff filed the instant Motion for Reconsideration upon her belief, through counsel, that the Defendants had fraudulently concealed from the Plaintiff a critical part of the police report into this highly unusual incident.

## II. ARGUMENT

The Defendants in their joint objection to the Plaintiff's Motion for Reconsideration

[2] It appears from the copy of the forms that items 1 through 33 which were part of the form were redacted from page two of the report given to the investigator. In a letter dated October 20, 2005, counsel for Lopardo explained that the page numbering "1 of 2" were created by the computers that print up the report. (Attached as Exh. C.)
[3] We would note that the Uniform Report disclosed by Defendant Lopardo on December 8, 2003 contained a fax confirmation at the top of the document which indicated that it was faxed by the Providence Police Department on July 28, 2003, less than one month after the filing of this action. Obviously, this was faxed to defense counsel and

argue that the Providence Police Department Report does not contain "witness statements", i.e., the statements of the officers involved in the arrest of Eric Kromah. The Defendants then go on to argue, without any supporting affidavits, that "[a] police report contains pertinent information regarding (among other things) the date, time and place of the offense, … and a brief narrative of the officer who was involved in the incident. A witness statement on the other hand contains a brief narrative of individuals (including police officers) who have knowledge about the incident being investigated." (Def. Mem., p.1.) (Second emphasis added.)

In addition to the absence of any factual support for this assertion by counsel, the "brief narrative by one of the officers involved in the incident" in the Uniform Report turns out to be written by an officer who through summary judgment claims not to have been involved in the incident which led up to this law suit. In his Memorandum of Law in Support of Motion for Summary Judgment, Lopardo states that he "arrived at the scene after the decedent had been pepper sprayed, handcuffed and taken into custody by the first two officers who arrived at the scene." (Def. Sum. Jud. Mem., p. 1.) Officers Kemble and Pazzetta, on the other hand, did not simply have "knowledge" about the incident, they were the officers directly involved in the arrest and taking of the decedent into custody.[4]

---

the defendant Department apparently sent a different version of the report to counsel than was given to Plaintiff.
[4] According to the officers' testimony, Kromah died while being transported to the hospital by Officer Pazzetta.

Furthermore, joint counsel for all defendants state that "in this case there was a one-page police report prepared by Sergeant Lopardo. In addition, there were six witness statements of police officers and three witness statements of civilians." Clearly, that statement is not correct. We now know that there were at least two reports prepared by Sgt. Lopardo – a two page report given to Plaintiff's investigator in or about September, 2000 (although the second page appears to have information redacted), and a second report disclosed by Lopardo on December 8, 2003.

This discrepancy as to Lopardo's reports, while minor as to substance, is of concern because the Department represented to Plaintiff's investigator that what it gave him was the entire report into this incident. Defendant Lopardo on the other hand provided a similar, yet different report that he represented was the "one-page police report prepared by [him]". Why then are there two reports? Also, according to the testimony of Sgt. Lopardo, the Uniform Reports are completed on a form called a BR 2. (Dep. Lopardo, p.15, 16.) If that is correct, it raises the question of how and why a portion of this form was removed from the second page of the Uniform Report given to Plaintiff's investigator.

The fact is that Kemble and Pezzatta were not witnesses to this incident; they were "the officers who [were] involved in the incident." Even in the absence of the testimony of Officer Kemble, i.e., that the Witness Statements were a part of the police report, the

definition of a "police report" argued by counsel for the defendants would include the statements by Officers Kemble and Pazzetta.

More importantly, whether defendants call the statements of Kemble and Pazzetta part of the "police report" or the "police package", the statements of Kemble and Pazzetta which were prepared on a Providence Police form and taken on the night of the incident should have been disclosed to Plaintiff's investigator in September, 2000. These were the officers involved in the actual arrest of the decedent, and while Defendant Lopardo['s counsel] refers to this semantic distinction in the definition of a police report and in his Rule 11 Motion for Sanctions[5], there is no reason that these statements of the involved officers which were taken on the night of the incident were not disclosed to the Plaintiff's investigator who requested all available information, including all reports into this incident.

The Defendants - the Providence Police Department and Sgt. Lopardo - should not be permitted to rely upon a hair splitting distinction between a police report and police package, especially since the involved officers statements were a part of the report and/or package and were completed on the night of the incident. That report and/ or package was fraudulently concealed from the Plaintiff by the defendants, the City of Providence and Sgt. Lopardo.

[5] We will address the Defendant's Rule 11 Motion for Sanctions separately.

Finally, we suggest that the Court note that the version of the Uniform Report disclosed by Defendant Lopardo on December 8, 2003, while timely disclosed through discovery, was faxed by the Defendant Providence Police Department on July 28, 2003 – three weeks after the filing of this suit by the Plaintiff – to Lopardo's attorney. This fact alone lends new support to our argument in opposition to the Defendant's Motion to Dismiss that the potential defendants knew or should have known of the institution of this law suit. We argued at that time that "[i]t *strains credibility to suggest that an incident* involving the death of a citizen in the custody of police that the only report that would be produced is the one paragraph report [disclosed by Lopardo]" (Pl. Mem. In Opp. To Mot. To Dism., p. ) Apparently, the report produced was not the only report of this incident.

As we argued in the earlier consideration of the Defendant's Motion to Dismiss, the Federal District Court for the District of Columbia held that relation back under Rule 15(c) applied where the use of "John Does" resulted from plaintiff's lack of identities of secret service agents as opposed to a "mistake" concerning the identities. Fludd v. United States Secret Service, 102 F.R.D. 803 (D.D.C. 1984). The court reasoned that the original complaint

described the incident but omitted the names of the then unknown agents. The court noted that "the secret service certainly knew who these agents were," adding that the attorneys for

the agents received timely notice of the complaint and knew the identity of the agents.[6] See also Ames v. Vavreck, 356 F. Sup 931, 943(D. Minn. 1973), where the relation back rule was applied since the city attorney represented both the originally named defendants and officers substituted for "John Doe" defendants.

We respectfully request the Court to reconsider its ruling on Defendant's Motion to Dismiss based upon the Defendant Providence Police Department and Lopardo's actions in concealing portions of the "police report, package" from the Plaintiff, thus preventing her from knowing the identities of "the police officers who [were] involved in the incident" in which her husband died while in the custody of the Providence Police.

## III. CONCLUSION

For all the foregoing reasons, the Plaintiff requests that her Motion for Reconsideration be granted and that the Amended Complaint be reinstated as to Officers Kemble and Pazzetta.

---

[6] See, also, Ames v. Vavreck, 365 F. Supp. 931, 943 (D. Minn. 1973), where the relation back rule was applied since the city attorney represented both the originally named defendants and officers substituted for "John Doe" defendants.

PLAINTIFF

By ______________________
Joseph A. Moniz
Moniz & Associates
100 Allyn Street
Hartford, CT 06103

And

By ______________________
Alton Wiley, Jr., Esq.
Local Associate Counsel
R.I. Bar #3337
960 Reservoir Avenue, Suite 22
Cranston, R.I. 02910
Her Attorneys

**CERTIFICATION**

I HEREBY CERTIFY that the foregoing was ~~sent via facsimile~~ mailed on this 12th day of November, 2005 to counsel of record listed below.

Kevin F. McHugh, Esq.
CITY SOLICITOR'S OFFICE
275 Westminster Street
Suite 200
Providence, RI 02903

Joseph F. Penza, Jr., Esq.
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886

______________________
Alton Wiley, Jr., Esq.

# PROVIDENCE POLICE DEPARTMENT

209 Fountain Street, Providence, RI
02903

## UNIFORM REPORT

PLAINTIFF'S EXHIBIT
A

| 1. REPORT TYPE: | 2. CCR NUMBER: | 3. TITLE: | 4. DV: |
|---|---|---|---|
| 1 | 00-106099 | B&E/FORCIBLE | N |

| 5. NATURE CODE: | 6. LOCATION: | 7. POST: |
|---|---|---|
| 051 | 0101 RIVER AV 1ST | 27 |

8. TIME & DATE OF OCCURANCE
FROM: 07/28/00 23:22
TO: 07/28/00 23:22

9. TIME & DATE REPORTED
07/28/00 23:22

10. COMPLAINANT/DEFENDANT (LAST, FIRST): KROMAH, ERIC
11. ADDRESS (STREET + NUMBER): 38 PHEBE ST
12. CITY/STATE: PROVIDENCE, RI

| 13. SEX | 14. AGE: | 15. RACE: | 16. PHONE: |
|---|---|---|---|
| M | 35 | B | |

17. PERSON REPORTING (LAST, FIRST): PROV POLICE,
18. ADDRESS (STREET + NUMBER):
19. CITY/STATE:

| 20. SEX | 21. AGE: | 22. RACE: | 23. PHONE: |
|---|---|---|---|
| | | | |

| 24. VEHICLE REGIST. | 25. STATE: | 26. YEAR | 27. MAKE: | 28. MODEL: | 29. COLOR: |
|---|---|---|---|---|---|
| | | | | | |

30. VIN NUMBER:
31. TOWED BY:

32. PROPERTY DESCRIPTION
DESCRIPTION OF ITEM (MODEL + SERIAL NUMBERS)

33. INCIDENT NARRATIVE

AT APPROXIMATELY 2223 HOURS THIS DATE, POLICE RESPONDED FOR A REPORT OF A BREAK IN PROGRESS AT 101 RIVER AVENUE, THE RESIDENCE OF EMMA CERVONE. UPON ARRIVAL POLICE OBSERVED A BLACK MALE SUBJECT, LATER IDENTIFIED AS ERIC KROMAH - DOB 6/7/65, AT THE REAR FIRST FLOOR WINDOW OF THE RESIDENCE, THE WINDOW HAD BEEN SMASHED. POLICE ATTEMPTED TO APPREHEND THE SUBJECT AND A BRIEF STRUGGLE ENSUED DURING WHICH THE SUBJECT WAS GIVEN A SHORT BLAST OF DEPARTMENT ISSUED PEPPER GAS AND HE WAS EVENTUALLY HANDCUFFED. A SEARCH OF THE HOUSE FOR ADDITIONAL SUSPECTS WAS MADE AND WAS NEGATIVE. THIS SUBJECT WAS THEN TRANSPORTED TO ROGER WILLIAMS HOSPITAL FOR TREATMENT, OF CUTS TO HIS HANDS AND ARMS, SUSTAINED WHEN HE SMASHED THE REAR WINDOW. UPON ARRIVAL AT ROGER WILLIAMS HOSPITAL HE WAS FOUND TO BE UNRESPONSIVE. HOSPITAL PERSONNEL ATTEMPTED TO RESUSCITATE THE SUBJECT AND A SHORT TIME THEREAFTER HE WAS PRONOUNCED DEAD.

CAB

| 34. INVESTIGATING OFFICER(S) | 35. FID | 36. POST ASSIGNED | PAGE: |
|---|---|---|---|
| SGT. LOPARDO | 077 | 25 | 1 OF 2 |

# PROVIDENCE POLICE DEPARTMENT

209 Fountain Street, Providence, RI
02903

## UNIFORM REPORT

| 34. INVESTIGATING OFFICER(S) | 35. FID | 36. POST ASSIGNED | PAGE: |
|---|---|---|---|
| SGT. LOPARDO | 077 | 25 | 2 OF 2 |

PLAINTIFF'S EXHIBIT B

# PROVIDENCE POLICE DEPARTMENT

209 Fountain Street, Providence, RI 02903

# UNIFORM REPORT

| REPORT TYPE: | 2. CCR NUMBER: | 3. TITLE: | 4. DV: |
|---|---|---|---|
| 1 | 00-106099 | B&E/FORCIBLE | N |

| 5. NATURE CODE: | 6. LOCATION: | 7. POST: |
|---|---|---|
| 051 | 0101 RIVER AV 1ST | 27 |

| 8. TIME & DATE OF OCCURANCE | 9. TIME & DATE REPORTED |
|---|---|
| FROM: 07/28/00 23:22 | 07/28/00 23:22 |
| TO: 07/28/00 23:22 | |

| 10. COMPLAINANT/DEFENDANT (LAST, FIRST) | 11. ADDRESS (STREET + NUMBER) | | | |
|---|---|---|---|---|
| CERVONE, EMMA | 101 RIVER AV 1ST FL | | | |
| 12. CITY/STATE: | 13. SEX | 14. AGE: | 15. RACE: | 16. PHONE: |
| PROVIDENCE, RI | F | 58 | W | |

| 17. PERSON REPORTING (LAST, FIRST) | 18. ADDRESS (STREET + NUMBER) | | | |
|---|---|---|---|---|
| CERVONE, EMMA | 101 RIVER AV 1ST FL | | | |
| 19. CITY/STATE: | 20. SEX | 21. AGE: | 22. RACE: | 23. PHONE: |
| PROVIDENCE, RI | F | 58 | W | |

| 24. VEHICLE REGIST. | 25. STATE: | 26. YEAR | 27. MAKE: | 28. MODEL: | 29. COLOR: |
|---|---|---|---|---|---|
| | | | | | |

| 30. VIN NUMBER: | 31. TOWED BY: |
|---|---|
| | |

32. PROPERTY DESCRIPTION

DESCRIPTION OF ITEM (MODEL + SERIAL NUMBERS)

33. INCIDENT NARRATIVE

AT APPROXIMATELY 2223 HOURS THIS DATE, POLICE RESPONDED FOR A REPORT OF A BREAK IN PROGRESS AT 101 RIVER AVENUE. UPON ARRIVAL POLICE OBSERVED A BLACK MALE SUBJECT, LATER IDENTIFIED AS ERIC KROMAR AT THE REAR FIRST FLOOR WINDOW OF THE RESIDENCE, THE WINDOW HAD BEEN SMASHED. POLICE ATTEMPTED TO APPREHEND THE SUBJECT AND A BRIEF STRUGGLE ENSUED DURING WHICH THE SUBJECT WAS GIVEN A SHORT BLAST OF DEPARTMENT ISSUED PEPPER GAS AND HE WAS EVENTUALLY HANDCUFFED. A SEARCH OF THE HOUSE FOR ADDITIONAL SUSPECTS WAS MADE AND WAS NEGATIVE. THIS SUBJECT WAS THEN TRANSPORTED TO ROGER WILLIAMS HOSPITAL FOR TREATMENT, OF CUTS TO HIS HANDS AND ARMS, SUSTAINED WHEN HE SMASHED THE REAR WINDOW. UPON ARRIVAL AT ROGER WILLIAMS HOSPITAL HE WAS FOUND TO BE UNRESPONSIVE. HOSPITAL PERSONNEL ATTEMPTED TO RESUSCITATE THE SUBJECT AND A SHORT TIME THEREAFTER HE WAS PRONOUNCED DEAD.

CAB

| 34. INVESTIGATING OFFICER(S) | 35. FID | 36. POST ASSIGNED | PAGE: |
|---|---|---|---|
| SGT. LOPARDO | 077 | 25 | 1 OF 1 |

PLAINTIFF'S EXHIBIT
C

O&P

OLENN & PENZA

ATTORNEYS AT LAW • LLP

October 20, 2005

***Via Facsimile (860) 278-2212***

Joseph Moniz, Esq.
Moniz & Associates
100 Allyn Street
Hartford, CT 06103

Re: Cholopy v. City of Providence, et al
Our File No.: 95326

Dear Joe:

This letter is being sent in response to a topic you raised in your October 19, 2005 letter to Magistrate Judge Hagopian.

You indicate that you are in the process of preparing a motion for reconsideration with respect to the court's denial of the plaintiff's motion to amend the complaint. I would remind you that the motion to amend the complaint was in fact granted. I think you meant to refer to the individual defendants' motions to dismiss (based on the statute of limitations) that were subsequently granted. Assuming that to be the case, you make reference to the fact that there was a "failure to disclose a part of the police report regarding this incident". You then go on to surmise that had that "part" of the police report been disclosed that the *pro se* plaintiff would have received the names of the other individual officers who were at the scene.

Out of professional courtesy I am suggesting that you not waste any time preparing that motion. I am in the process of obtaining the second page of the police report. The second page is **blank**. For whatever reason the computers that print up the report did in fact indicate in the lower right hand corner, "1 of 2". When I checked with the department, they indicated that sometimes happens with police reports and that they would be sending me the second page of the report. I will have the report in my office tomorrow. Unfortunately I will be out most of the day so I may not be able to get it to you until over the weekend or on Monday.

I thought it best that I advise you in writing as soon as possible so you don't waste your time going down a road that will ultimately lead to a dead end. Of course if you feel the necessity to file your proposed motion, please feel free to do so.

Very truly yours,

Joseph F. Penza, Jr.
jfp@olenn-penza.com

JFP:jlb \letters\95326moniz
cc: Kevin McHugh, Esq.
Alton Wiley, Jr., Esq.

critical, you would, like I said, common sense would come into play.
Q. Was there any rule as to not bringing someone to the police station based upon the certain types of injuries?
A. Written rules, I'm not sure.
Q. What training did you receive with regard to completing incident reports, police reports?
A. We had training in the police academy.
Q. What do they call them in the Providence Police Department, you have a form called uniform report. Are they referred to as incident reports?
A. BR 2.
Q. What does BR 2 stand for?
A. I have no idea. That's what they called it.
Q. What kind of information were you taught to put into -- withdraw that. With respect to the training, were you trained to make reports regarding any particular police incident where there's an arrest?
A. Yes.
Q. If there is an arrest of a person, there would be a report?
A. Yes.
Q. Would the reports change any depending upon the

nature of the arrests for misdemeanors, there would be a certain report for felonies, that there would be a different report?

A. No, it would be the same form.

Q. So the form we have here, that's Exhibit 5, is the form that would be used for any arrest during that period of time?

A. Any police report.

Q. During that time period, any police report?

A. Yes.

Q. We also have as Exhibits 1 through 4 witness statements, are those a part of this report or are they separate reports? Let me withdraw that. We have what's called a uniform report, which you indicate is a form that's used for -- a format used for any report, any police report?

A. Yes.

Q. We also have as exhibits witness statements. Are those types of statements a part of this report or part of the uniform report, I should say?

MR. PENZA: Objection to form.

A. No.

Q. Are these witness statements something that would be done in any given arrest?

A. Repeat that, please.

A. Yes.
Q. Could you explain to me the circumstances under which you gave that statement?
MR. PENZA: Objection to form. You can answer.
A. Basically I responded to a call for break in progress.
Q. Okay. Now, this statement that you gave does not have, as I can tell, a date on it. Is that a fair statement?
A. On 7-28-00, the first line.
Q. It says date 7-28-00, is that the date on which you gave the statement?
A. Most likely, yes.
Q. Do you remember where it was that you gave the statement?
A. At the police station.
Q. To whom did you give the statement?
A. It becomes part of the police report, police package.
Q. Is this a form that is used by the Providence Police for statements that are given?
A. Yes.
Q. There appears to be at the top, it says, "Question: What is your name?" Is that something