JFP:pac 95326 \pleading\95326MSanctions2.wpd

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

ROSELINE CHOLOPY, In Her Individual Capacity and as Administratrix of the Estate of ERIC A. KROMAH )
)
VS. ) C.A. NO. 03-284L
)
CITY OF PROVIDENCE, ET AL )

**DEFENDANT LOPARDO'S MOTION FOR RULE 11 SANCTIONS**

Defendant, Kenneth Lopardo, moves for sanctions pursuant to Fed.R.Civ.P. 11. Plaintiff's counsel have failed to withdraw their motion to reconsider filed on or about October 26, 2005, or appropriately correct the allegations submitted therein, within the twenty-one (21) day "safe-harbor" period. Plaintiff's counsel was notified on October 31, 2005 by letter and was given a copy of this motion.

By failing to withdraw the motion or appropriately correct the allegations, the plaintiff's counsel erroneously and in violation of Rule 11 had asserted that the defendant fraudulently withheld documents, which is patently false and without any basis. By signing the motion to reconsider, based on these false assertions, the plaintiff's attorneys have violated Fed.R.Civ.P. 11(b) subsections 1 and 3.

Defendant respectfully requests that the court grant all appropriate fines, sanctions, attorney fees and costs in accordance with Rule 11 in order to deter plaintiff's counsel from filing frivolous and false pleadings in the future.

In support of his motion, defendant Lopardo has attached a memorandum of law.

DEFENDANT, Kenneth Lopardo
By his Attorney,

Joseph F. Penza, Jr., Esq. #0607
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

**CERTIFICATION**

I certify that I sent a true copy of the within on 12/19/05 to:

Joseph Moniz, Esq.
Moniz & Associates
100 Allyn Street
Hartford, CT 06103

Alton Wiley, Jr., Esq.
Local Associate Counsel
960 Reservoir Avenue, Suite 22
Cranston, RI 02910

Kevin F. McHugh, Esq.
CITY SOLICITOR'S OFFICE
275 Westminster Street, Suite 200
Providence, RI 02903-1845

Patricia A. Cerca

JFP:pac 95326 \pleading\95326Rule11MemoLaw.wpd

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| ROSELINE CHOLOPY, In Her Individual Capacity and as Administratrix of the Estate of ERIC A. KROMAH | ) | |
| VS. | ) | C.A. NO. 03-284L |
| CITY OF PROVIDENCE, ET AL | ) | |

**DEFENDANT LOPARDO'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR RULE 11 SANCTIONS**

**I. Background.**

On May 25, 2005, this court entered a Decision and Order whereby the court granted the "New Defendants'" motion for judgment on the pleadings pursuant to Rule 12(c).[1] The New Defendants argued that the plaintiff's claim against them was barred by the statute of limitations. Plaintiff argued that the amended complaint (wherein the New Defendants were named) should relate back to the date the initial complaint was filed (i.e. before the statute of limitations had expired). In granting the New Defendants' motion, the court cited numerous cases for the proposition that naming a John Doe defendant whose identity is unknown at the time of the filing of the lawsuit does not relate back under Rule 15(c)(3).

Defendant Lopardo had filed a motion for summary judgment on September 28, 2005. On October 26, 2005, in addition to filing an objection to Lopardo's motion for summary judgment, the plaintiff filed a motion for reconsideration and memorandum in support thereof. The linchpin of

[1] The court used the term "New Defendants" in is Decision and Order and for ease of reference, that same term is used herein.

plaintiff's argument in her motion for reconsideration was that the "defendants"[2] had fraudulently concealed the identity of the New Defendants. Plaintiff contended that witness statements of the officers who had responded to the scene (i.e. the New Defendants) were—or should have been—part of the police report which is the only public record of the incident in question. Thus, the plaintiff contended that when she initiated her lawsuit three weeks before the statute of limitations was about to expire, she was unable to name the New Defendants and therefore resorted to the use of "John Doe" defendants.

The court ordered an evidentiary hearing with respect to the plaintiff's allegations that the defendants had fraudulently concealed portions of the police report regarding this incident. Those hearings took place on December 7th, 8th and 13, 2005. After hearing the evidence, the court concluded that the plaintiff's motion was without merit and consequently denied same.

## II. Analysis of Allegations Set Forth in the Plaintiff's Motion for Reconsideration.

Plaintiff claims that the witness statements prepared by the officers who were at the scene of the incident were "part of the Providence Police Department's report of the incident" and thus, when plaintiff was not provided with the entire "police report", she was deceived. This last-ditch effort to save the case is predicated literally on the slip of the tongue by one of the police officers whose deposition was taken by the plaintiff on September 8, 2005. Plaintiff's counsel, Joseph Moniz, relies on the following questions and answers of Officer Edwin Kemble for the basis to claim that witness statements are part of the "police report".

> Q. It *(referring to Kemble's witness statement)* says date 7-28-00, is that the date on which you gave the statement?
> A. Most likely, yes.
>
> Q. Do you remember where it was that you gave the statement?
> A. At the police station.

---

[2] As will be noted later in this memorandum, plaintiff is all over the lot with respect to exactly who the "defendants" are that he are referenced in the various motions and memoranda.

Q. To whom did you give the statement?
A. It becomes part of the police report, **police package**. *(emphasis added)*

Q. Is this a form that is used by the Providence Police for **statements** that are given? *(emphasis added)*
A. Yes.

[From Kemble's deposition at page 12, lines 15-23.]

Of significance is Kemble's correcting himself in the very same sentence when he misspoke. While he initially made reference to the witness statement being part of the "police report", he obviously knew that was in error and in the very next two words corrected himself by saying "police package".

To suggest that Mr. Moniz truly did not understand the difference between a police report and a witness statement is disingenuous at best. Indeed, in replying to the defendants' objection[3], Mr. Moniz referenced Lopardo's deposition testimony in the following manner: "Also, according to the testimony of Sgt. Lopardo, the Uniform Reports are completed on a form called a BR2. (Dep. Lopardo, p. 15, 16.)". [See page 5 of plaintiff's reply.] Counsel then attached pages 15 and 16 of Lopardo's deposition to his memorandum. What counsel failed to note was that at page 16 of Lopardo's deposition, he was asked the following specific question:

Q. We also have as exhibits witness statements. Are those types of statements a part of this report or part of the Uniform Report, I should say?
A. No.

---

[3] Plaintiff's reply to the defendants' objection presents another confusing facet of this case. The initial reply was faxed to counsel on November 8, 2005. However, on November 10, 2005, Magistrate Judge Martin refused the attempted filing of the reply because the papers were not signed by local counsel, there was no certification of sending the papers to opposing counsel and there were more than five pages of exhibits attached to the memorandum in violation of General Order 2002-01. The reply was refiled after local counsel signed the memorandum and the certification was also signed. The certification, however, indicates that it was mailed to opposing counsel on November 17, 2005. In fact, it was not mailed to opposing counsel until December 5, 2005.

In an obvious effort to confuse the issue, Mr. Moniz argued in his memorandum that after Kemble made his statement about the "police report/police package" (quoted above), that he [Kemble] then "explained in detail that the statement was part of the report". That is a flat out falsehood. Attached for the court's review are those portions of Kemble's deposition dealing with this issue **(Exhibit A)**. Pages 13 through 17 of Kemble's deposition reveals that Mr. Moniz questioned Kemble about his witness statement in detail. Nowhere in those pages or any other place in Kemble's deposition does he ever "explain in detail" that his witness statement is part of the police report.

## III. Who Are the "Defendants" That Counsel is Referring to?

Mr. Moniz is unclear about who the "defendants" are that supposedly "fraudulently concealed" the documents he believes should have been part of the police report. In one portion of his memorandum, he suggests that the "defendants" are the officers who were dismissed from the case ["The Defendants then sought to and did benefit from their failure to disclose by arguing in their Motion to Dismiss that the plaintiff failed timely to include the individual officers...".]. Next, he suggests that the "defendants" involved in the "cover up" are Lopardo, former Chief Prignano, and the City of Providence ["The Defendants now have moved for Summary Judgment based upon the Court's dismissal of the claims against the individual officers...".].[4]

In an effort to ameliorate the situation created by his reckless statements in his motion for reconsideration, counsel for the plaintiff sent defense counsel a letter on October 27, 2005 which is attached as **Exhibit B**. Even in this correspondence, Mr. Moniz never indicates who he is blaming for the alleged fraudulent concealment.

To add insult to injury and after writing a half-hearted letter of apology (if one could call his letter of October 27, 2005 that), in his reply memorandum, Mr. Moniz makes the following statements without any basis.

---

[4] Of course, Mr. Moniz continues with his tendency to misstate the facts. That is not the basis for the defendants' motion for summary judgment, but that is neither here nor there for the purposes of this motion.

- "We now know that there were at least two reports prepared by Sergeant Lopardo". (See page 5 of reply memorandum.)

- "...It raises the question of how and why a portion of this form was removed from the second page of the Uniform Report given to plaintiff's investigator". (See page 5 of reply memorandum.)

- "That report and/or package was fraudulently concealed from the Plaintiff by the defendants, the City of Providence **and Sergeant Lopardo**". *(emphasis added)* (See page 6 of reply memorandum.)

While one might understand how counsel could argue that there were two separate reports prepared by Lopardo, to suggest that a portion of page 2 (which was blank) had certain documentation "removed" from it is completely without any foundation whatsoever. Moreover, the most striking statement in the reply memorandum is the accusation that the witness statements (which counsel continues to insist are part and parcel of the police report) were "fraudulently concealed from the Plaintiff" by Sergeant Lopardo. Besides being factually inaccurate, such a statement is a falsehood directed not only to Sergeant Lopardo, but also implies that Lopardo's counsel was involved. Since this statement was made in the context of litigation, anyone reading plaintiff's memorandum and/or reply memorandum could certainly infer that not only was Lopardo involved in a "cover up", but that his counsel was involved also.

To make these statements without any foundation whatsoever is reckless and is the reason why we have Rule 11.

## IV. The Applicability of Rule 11.

On October 31, 2005, defense counsel sent to plaintiff's counsel a copy of Lopardo's motion for Rule 11 sanctions. Pursuant to the safe harbor provisions of Rule 11, counsel also sent a cover letter giving plaintiff's counsel an opportunity to either withdraw the improper document or

appropriately correct the allegations contained therein **(Exhibit C)**. Counsel did neither and as a result, defense counsel now presses his motion for sanctions on behalf of the defendant Lopardo.

In this case, Rule 11(b) has been violated by plaintiff's counsel. Prior to submitting their memorandum and reply memorandum in support of their motion for reconsideration, they made absolute no inquiry that provided them with a good faith basis to make the scurrilous accusations set forth in those documents. Moreover, the filing of the memoranda caused unnecessary delay in moving forward with this case and greatly increased the cost of litigation. Defense counsel not only had to respond to the motion for reconsideration, but then had to spend hours preparing witnesses for the evidentiary hearing and attending the evidentiary hearing.

In the end, the evidentiary hearing simply established that as early as September of 2000, Mr. Moniz was aware that police officers other than Sergeant Lopardo were involved in the incident. His investigator (Mr. Sheehan) went to the police department and simply requested "the police report". He never asked for witness statements.[5]

When Mr. Moniz filed this claim with the City Council in April of 2001, he was aware that he did not have the names of all of the potential defendants since he made reference to "John Doe". The plaintiff had all of the witness statements by December of 2003 (albeit too late to add any additional defendants), but never raised any of these issues when the New Defendants first filed their motion for judgment on the pleadings under Rule 12(c). The point being, that there was nothing <u>new</u> that warranted the plaintiff to file a motion for reconsideration. The allegations were without merit and, in some cases, completely false. Moreover, the motion wasted everyone's time as well as the city's money.

---

[5] Interestingly, Sheehan made clear at the hearing that is all he asked for. However, in the affidavit prepared by Mr. Moniz, Sheehan claimed that he "was told in no uncertain terms that there were no such reports **or statements**, and that I was given all the information that the department had regarding this incident". (See paragraph 7 of Sheehan affidavit.)

**V. Defendant Lopardo's Request for Attorney's Fees.**

In discussing the sanctions available under Rule 11, paragraph (c)(2) provides that the sanction may consist of "an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation". Counsel for Lopardo requests that the court impose such a sanction on plaintiff's counsel. Rather than spend any additional time in gathering billing information and preparing affidavits and securing witnesses to address the reasonableness of counsel fees, counsel for Lopardo would request that the court make its ruling as to whether or not attorneys fees are warranted and then if so, counsel will provide the court with all of the details necessary for the court to make a finding.

**VI. Conclusion.**

The obvious purpose of Rule 11 is to ensure that counsel make, at the very least, a good faith representation when filing documents with the court. The rule is in place to deter counsel from making frivolous arguments that have no basis either in fact or in law. In this case, notwithstanding everyone's knowledge that witness statements are not the same thing as a police report, counsel for the plaintiff relied solely on Officer Kemble's misspoken words (which were immediately corrected) to contend that the defendants had "fraudulently concealed" certain documents from the plaintiff and her representatives. Raising this issue in a motion for reconsideration was improper and without foundation for a couple of reasons. **First**, anything that plaintiff's counsel was aware of when the motion for reconsideration was filed was also known to them (or at least Mr. Moniz) when the New Defendants filed their motion under Rule 12(c) several months ago. **Second**, and more significant in the context of Rule 11, is counsel's loose use of the term "defendants". There was absolutely no evidence—or any basis to believe that such evidence would ever come to light—that **any** of the defendants (original or new) were in any way involved in providing the plaintiff or her representatives the police report in this case. Similarly, there was no evidence that any of the "defendants" ever had conversations with the plaintiff or her representatives with respect to this case until their depositions were taken this past summer.

Wherefore, defendant Lopardo requests that his motion for sanctions under Rule 11 be granted.

Respectfully submitted,
DEFENDANT, Kenneth Lopardo
By his Attorney,

Joseph F. Penza, Jr., Esq. #0607
OLENN & PENZA, LLP
530 Greenwich Avenue
Warwick, RI 02886
PHONE: (401) 737-3700
FAX: (401) 737-5499

**CERTIFICATION**

I certify that I sent a true copy of the within on 12/19/05 to:

Joseph Moniz, Esq.
Moniz & Associates
100 Allyn Street
Hartford, CT 06103

Alton Wiley, Jr., Esq.
Local Associate Counsel
960 Reservoir Avenue, Suite 22
Cranston, RI 02910

Kevin F. McHugh, Esq.
CITY SOLICITOR'S OFFICE
275 Westminster Street, Suite 200
Providence, RI 02903-1845

Patricia A. Cerca

A. I believe the same day, late in the afternoon, yes.
Q. Aside from those statements, did you review any reports?
A. Just the basic -- the original report.
MR. MONIZ: I'm going to show you and have marked a couple of documents.
(PLAINTIFF'S EXHIBITS 1 THROUGH 5 MARKED FOR IDENTIFICATION)
Q. Showing you for the record what was marked as Plaintiff's Exhibit Number 1 which appears to be a statement by yourself, do you recognize that?
A. Yes, I do.
Q. Is that a statement that you signed?
A. Yes.
Q. And that, I assume, is one of the statements you reviewed a few weeks ago here?
A. Yes.
Q. Showing you what's been marked as Exhibit 2 which is a statement by Officer Pazzetta, Vincent Pazzetta; do you recognize that?
A. Yes.
Q. Is that a statement you also reviewed when you were here a couple weeks ago?
A. Yes.



Q. Showing you what's been marked as Exhibit 3, Plaintiff's Exhibit 3, a statement by Officer Lopardo, Kenneth Lopardo; do you recognize that as one of the statements you reviewed here?
A. Yes.
Q. And showing you Exhibit 4, Plaintiff's 4, a statement of Michael Imondi; do you recall reviewing that?
A. Yes.
Q. Finally, Exhibit 5, which is entitled a Uniform Report. Do you recognize that as something that you reviewed also?
A. Yes.
Q. Now, Officer Kemble, aside from those five exhibits that I've shown you, do you recall reviewing any other statements while you were here a few weeks ago?
A. No.
Q. Did you review any other reports or any other writings not necessarily statements of individuals?
A. No.
Q. The statement which you signed, which I believe is Exhibit 1, do you recall the circumstances under which you gave that statement?



A. Yes.
Q. Could you explain to me the circumstances under which you gave that statement?
MR. PENZA: Objection to form. You can answer.
A. Basically I responded to a call for break in progress.
Q. Okay. Now, this statement that you gave does not have, as I can tell, a date on it. Is that a fair statement?
A. On 7-28-00, the first line.
Q. It says date 7-28-00, is that the date on which you gave the statement?
A. Most likely, yes.
Q. Do you remember where it was that you gave the statement?
A. At the police station.
Q. To whom did you give the statement?
A. It becomes part of the police report, police package.
Q. Is this a form that is used by the Providence Police for statements that are given?
A. Yes.
Q. There appears to be at the top, it says, "Question: What is your name?" Is that something



that was being asked of you by someone, or is that a part of a form?
A. That's part of the form.
Q. Who is it that filled in the information in this case?
A. I don't know.
Q. Did you type the information that's in here?
A. Yes.
Q. So this was typed yourself?
A. Yes.
Q. So where it says what is your name, is that something that was typed in advance on a form?
A. Correct.
Q. What about the line that says, "I, Edward J. Kemble, Jr., voluntarily, without threats," is that part of something you typed or was that already there?
A. Everything there, but my name.
Q. So you would type your name in?
A. Yup.
Q. The information, "What is your name?" I assume that's something you would type in?
A. Correct.
Q. Do you put the A and then the colon, Edwin J. Kemble, Jr.? Do you see where it says Q and a

EXHIBIT A

Word Index

colon, "What is your name?" Below that there is an A:.
A. I do not put the letter A, I just fill in the blanks.
Q. So you would fill in the date of birth, for example, where it says 6-9-56, and then 209 Fountain Street, you would have filled in?
A. Yes.
Q. As well as police officer?
A. Yes.
Q. And where it gives the phone number there, you filled that in yourself?
A. Yes.
Q. Is that the police department phone number or your personal number?
A. That's the police department phone number.
Q. Then the information that's filled in here, that's filled in by you?
A. Correct.
Q. There's no indication of the time that you did this report other than on top, it says time 2322 hours. Do you know when you filled this report out?
A. It would be at that time.
Q. Is it your testimony that you filled this report



out at 11:22, or is that the time of the incident that was investigated?
A. It was probably the time of the incident.
Q. And as you will see in the other reports, all of the -- if you look at the uniform police report, which is Exhibit 5, it indicates in that report that the incident was reported at approximately 2322, correct?
A. Okay. Correct.
Q. If you look at the first line of your report, it says that, "On 7-28 at 2322 hours I responded to 101 River Street"?
A. Yes.
Q. Would you agree with me the 2322 is the time this incident was first reported?
A. 2322 hours. The top time is probably an incorrect time. It's probably done an hour or two hours after the incident.
Q. Do you remember as you sit here today actually filling this report out?
THE WITNESS: What's the question?
Q. Do you remember today as you're sitting here now, the circumstances under which you filled this report out?
MR. PENZA: Objection to form. You



can answer.
A. It's been quite awhile. Pretty much.
Q. I assume you were at the police department when you did this?
A. Yes.
Q. And you don't remember -- withdraw that. Do you remember whether or not it was after the incident itself that same evening or in the early morning hours?
A. After the incident.
Q. But you don't remember what time?
THE WITNESS: Filling this report out?
MR. MONIZ: Right.
A. Hour or two hours later.
Q. When it says time on the top there, where it's 2322 hours, is that slot intended to be the time that you filled the report out or the time of the incident itself?
A. The time of the incident -- the time of the incident, what time you're taking the statement, that's when it's supposed to be.
Q. What you said earlier, when you said that's in error, the time, it should be the time that you filled the statement in?



A. Correct.
Q. There is no other way for us to tell when it is that you did the report?
A. There probably is a way, somehow. Logging into the computer system.
Q. But you agree that time was supposed to be when you do the report as opposed to when it's reported?
A. Uh-huh.
Q. And when you do these reports, is this something that's required by the Providence Police Department?
A. Yes.
Q. Let me switch subjects for a minute, Officer Kemble, and ask you if you would just give me your background as a police officer with the Providence Police Department.
A. Approximately seven and a half years on the job right now in the patrol division.
Q. When did you first come on to the department?
A. Sworn in June 2nd, 1998.
Q. You were sworn in as a patrol officer?
A. Yes.
Q. Is that the current rank you hold?
A. Yes.

# MONIZ & ASSOCIATES

100 Allyn Street
Hartford, Connecticut 06103

Telephone: (860) 278-0200
Facsimile: (860) 278-2212

JOSEPH A. MONIZ

October 27, 2005

Joseph F. Penza, Jr., Esq
Olenn & Penza - LLP
530 Greenwich Ave.
Warwick, RI 02886

Re: **Cholopy v. City of Providence, et al.**

Dear Attorney Penza:

I am writing this letter in response to a call I received yesterday from Bill Wiley, our local counsel in this matter. He informed me that you called him late yesterday regarding the motions we filed earlier in the day regarding our claim that the defendants had fraudulently concealed a critical portion of the Providence Police Report regarding the arrest and death of Eric Kromah on July 28, 2000. The message he gave me was that you took offense to the motions, and gave us until 5pm tomorrow to withdraw the motion, or that you would come out "with guns blazing" and would seek sanctions under Rule 11. From what Bill told me, you apparently interpreted the motions to suggest that we accused you of fraudulently concealing the missing portions of the Providence Police Report. That is not what we state in our motions, nor do we believe that you or your office is responsible for the failure of the defendants to provide the full police report, as they should have.

I filed the motions in question after reviewing the record carefully, and being fully aware of the representations made therein. This is a case in which the husband of my client died while in the custody of the Providence Police, when the only visible injuries he suffered according to your clients were minor surface wounds, for which he was taken to Roger Williams Hospital. While that alone is strange, Kromah was described by all involved as perfectly okay when he got into the police cruiser and died on the way to the hospital. To top things off, we have two diametrically opposed medical reports as to the cause of his death. No matter what the cause of Eric Kromah's death, the official police report should have contained more than a one paragraph narrative by an officer who apparently was only involved after the fact of the conduct by the officers who arrested Kromah. We learned for the first time during the deposition of Officer Kemble that there was in fact an attachment to the police report in the form of statements by the involved officers, which was contained on a form used by the Providence Police Department for statements of officers to an incident. Officer Kemble's testimony very clearly states that

EXHIBIT B

his and the statements of other officers involved in the arrest are a part of the official police report of the incident.

This part of the report should have been provided to the Plaintiffs along with the one page, one paragraph report signed by Officer Lopardo, if for no other reason, than out of respect to a family who deserved to know the circumstances surrounding the death of their loved one. And, Kromah's family repeatedly requested the full report of what happened, and were given only the one page report of Sgt. Lopardo. Even if one were to argue that the statements of the officers on the night of the incident were not technically a part of the report, which would be contrary to the testimony of Officer Kemble, there still would be no reasonable explanation as to why the statements of the officers involved would not have been provided to the family, or at the very least, some claim made that they were confidential or somehow protected. Anyone who was aware of the existence of these statements and who knew that the Plaintiff was seeking the police report into this highly unusual death would certainly understand the significance of the accounts of the involved officers. This is especially true in view of the incredibly short narrative report of Officer Lopardo.

In conclusion, I stand by the motions we filed and believe that Officer Kemble's testimony gives ample support to the claims made therein. Please feel free to call me if you would like to discuss this further.

Very truly yours,

Joseph A. Moniz

Joseph A. Moniz

Cc: Kevin F. McHugh, Esq.
Alton Wiley, Jr., Esq.

O&P
OLENN & PENZA
ATTORNEYS AT LAW - LLP

October 31, 2005

Joseph Moniz, Esq.
Moniz & Associates
100 Allyn Street
Hartford, CT 06103

Alton Wiley, Jr., Esq.
Local Associate Counsel
960 Reservoir Avenue, Suite 22
Cranston, RI 02910

Re: Roseline Cholopy v. City of Providence, et al
Our File No. 95326

Gentlemen:

Pursuant to the safe harbor provision of Rule 11 of the Federal Rules of Civil Procedure, I am putting you both on notice that if you fail to withdraw your motion to reconsider, your memorandum in support thereof and your objection to the defendants' motion for summary judgment (to the extent it applies to the subject matter of your motion for reconsideration) or appropriately correct the allegations contained therein within the next 21 days, then I will proceed to file a request for sanctions under Rule 11.

I enclose a copy of my motion for sanctions which will be filed unless the corrective action set forth above is taken within the 21-day time period.

As far as the many falsehoods contained in your various court documents, I would refer you to the defendants' objection to your request for reconsideration.

Very truly yours,

Joseph F. Penza, Jr.
jfp@olenn-penza.com

JFP:pac \letters\95326Attorneys2.wpd
Enclosure
cc: Kevin F. McHugh, Esq.

EXHIBIT C